The State v. Clarissa.

---

# THE STATE v. CLARISSA, a slave.

1. To constitute the crime of an "attempt to poison" a white person, by a slave, there must be an actual attempt to poison, by the administration of some poisonous drug, or substance, calculated to destroy human life.
2. An indictment under this statute, must alledge, that the substance admin-

8

istered was a deadly poison, or calculated to destroy human life. An in-
dictment which alledges the administration of the seed of the Jamestown
weed, but does not contain an allegation that it is a poisonous substance,
calculated in its effects to destroy human life, is insufficient to sustain a
judgment.

3. The grand jury cannot be called, and required to expurgate themselves of
any supposed interest, or bias, at the instance of one in jail, and expect-
ing an indictment to be preferred against him. Objections to the grand
jury must be taken by plea in abatement, at the term at which the indict-
ment is found.

4. Where a slave after a whipping had confessed her guilt, and subsequently
when the overseer inquired why she had committed the act, confessed the
crime: held, that the answer to this question was not admissible evidence,
as the question assumed the fact of her guilt as previously admitted by
her. Quere—Would the subsequent confession of a slave, after a confes-
sion had been extorted, be evidence in any case?

Error to the Circuit Court of Dallas.

THE prisoner was indicted for an attempt to poison, by an
indictment as follows: The grand jurors for the State of
Alabama, empanneled, sworn and charged, &c., upon their
oaths present, that Clarissa, the property of, &c., on, &c.,
feloniously and wilfully did administer to, and cause to be
administered to, and taken, by one Nelson Parsons, and one
Hezekiah Bussey, then and there, being free white persons,
a large quantity of a certain noxious, and destructive thing,
called the seed of Jimson weed, or Jamestown weed, to wit,
two ounces thereof, with intent then and there, and thereby
feloniously, wilfully, and of her malice aforethought, the said
Nelson Parsons, and the said Hezekiah Bussey, to poison,
kill, and murder, against the peace and dignity of the State,
&c. &c.

Previous to the finding of the bill of indictment by the
grand jury, on the third day of the term, the defendant by
her counsel, stated that she was confined in the jail of Dallas
county, charged with having attempted to poison certain
persons, and that her case would probably come before the
grand jury then sitting, and moved the court for leave to
have the grand jury brought into court, and purged, in refer-
ence to defendant's guilt or innocence; and that each of
them might be asked, if before they were summoned and or-

ganized, and at the time, they had any fixed opinion, as to the guilt or innocence of the accused, which would bias his finding ; which motion the court refused, and the defendant excepted.

A true bill being found, upon the trial of the prisoner, it was proved that she was the cook of Parsons, who lived on the plantation as her overseer, and that he and Bussey having partaken of coffee at breakfast, prepared and administered by the prisoner, were affected in the same manner as if they had taken narcotic poison. The State also offered to prove, that for a succession of days previous, she had prepared and administered coffee similarly charged with poison, and producing violent effects. The prisoner's counsel objected, unless it was proved, the coffee was administered both to Bussey and Parsons, which objection was overruled.

The State introduced Chloe, the mother of the prisoner, who stated, that she cooked for the negroes on the plantation, and was often in the kitchen, where the prisoner prepared the overseer's meals. That on two occasions, she had seen the prisoner put a small bag of the seed of Jamestown weed, in the coffee-pot—that one of these occasions, was on the morning when Bussey breakfasted with Parsons. That not wishing to see Bussey her master poisoned, during the absence of the prisoner, and whilst the coffee was boiling, she took the bag of seed from the coffee-pot, and threw it away. The witness stated, that at first she had denied all knowledge of the poisoning, but on being whipped by Bussey, had disclosed the above facts, which she insisted were true. That the prisoner was also whipped with great severity, but refused to make any confession ; but on being informed by Bussey her master, that Chloe had confessed what she knew, made a confession, that she had prepared and administered the poison in the coffee.

This confession was on motion of the prisoner, excluded.

It was also proved, that after this confession, which was on Thursday, the prisoner was removed from the house to the field, and on the next Saturday was sent for by the overseer, to look up some of his clothes. The overseer asked her which she liked the best, cooking, or working in the field, and on her answering that she preferred the former, he

then asked him why she had continued to give him poison, when she saw him so near dying from the effect of it. She replied that she did not know, unless it was the devil that put it into her head. Parsons then told her, that her return to the kitchen depended on her future good conduct, but was uncertain whether this was told before or after this confession.

The prisoner's counsel moved to exclude this confession, which the court refused to do, but instructed the jury, that it was difficult in the case of a slave to apply the rules of law in regard to confessions. That slaves might be considered as in almost a state of duress, and under all circumstances, confessions made by them, ought to be received with a great deal of caution. That the last confession could not be excluded from the jury, and yet upon that alone, it would be unsafe to convict the prisoner. If, however, they were satisfied beyond a reasonable doubt, that it was fully sustained and corroborated, by other independent testimony, they could not but find the prisoner guilty under the indictment.

The prisoner's counsel then moved the court to charge the jury, that if they believed the said Bussey and Parsons had been poisoned by the prisoner, she could not be convicted on the indictment of an attempt to poison them, which charge the court refused.

To all these matters the prisoner excepted, and now assigns as error, as also that the indictment is insufficient.

The prisoner was found guilty, and condemned to be hung.

Peck, for the plaintiff in error.
Attorney General, for the State.

ORMOND, J.—The offence for which the prisoner was indicted, is in the language of the act, an "attempt to poison" a white person, which in the case of a slave is a capital offence. The offence consists in the attempt to do an act, which if consummated, would have caused death, and cannot be committed but by the actual attempt to administer a poisonous drug, or substance, calculated to produce death. An unexecuted determination to poison, though preparation was made for that purpose, or the actual administration of a sub-

stance not poisonous, or calculated to cause death, though believed to be so by the person administering it, will not be an attempt to poison, within the meaning of the statute. From this analysis of the statute, it follows, that the indictment should alledge, that the substance administered was a deadly poison, or calculated to destroy human life, as it is necessary that every indictment should warrant the judgment rendered upon it. Yet every allegation in this indictment may have been proved, and the life of the persons against whom the supposed attempt to poison was made, never have been in jeopardy; as it cannot be known as matter of law, that the seed of the Jamestown weed is a deadly poison. The moral guilt, it is true, is as great in the one case as in the other; but that is not the offence which the law intended to punish; but the actual attempt to poison, by means calculated to accomplish it.

The attempt to purge the grand jury, as it is called, was wholly unauthorized. In the State v. Hughes, 1 Ala. 658, it was held, that the grand jury could not be asked, before they were sworn, whether they had not formed and expressed an opinion, as to the guilt or innocence of one whose case they would probably have to pass upon. Such was also the opinion of the court in Tucker's case, 8 Mass. 286. In Hughes' case, *supra*, this court intimated, that challenges for causes, not operating a universal disqualification, might be made after the jury was elected and sworn. It was not intended by this suggestion, that the grand jury should be called at the pleasure of any one, expecting to have a charge preferred against him, and compelled to expurgate themselves of any supposed bias, but that after indictment found, the objection might be made. This was afterwards provided for, in the penal code, by restricting a plea in abatement to the array of the grand jury, or to the disqualification of any of its members, to the term at which the indictment is found. [Clay's Dig. 458, § 51.] We are clear in the opinion, that no such right exists as that claimed in this case.

Although the confessions of slaves, freely and voluntarily made, uninfluenced by threats or promises, must, as in the case of white persons, be received in evidence, it must be admitted; their condition in the scale of society, throws a

certain degree of discredit over any confession of guilt they may make, and renders it unsafe if not improper, to act upon such evidence alone, without other corroborating proof. But when a confession has been extorted by threats or punishment, or obtained by promises of favor, it would seem that no subsequent confession of the same facts, ought in the case of slaves, under any circumstances to be admitted, as even a recantation of what was once admitted, would be to expose the accused again to punishment. We need not, however, decide the general question, whether such subsequent independent admissions of the same facts, could in any case be competent, as it is clear those made in this case, should not have been received.

The overseer, as it appears, some two or three days after the confession of the prisoner, made after having received a severe whipping, inquired of her why she continued to give him poison, when she had seen him so near dying from the effect of it. This inquiry assumed the fact of her guilt, from her previous confession, and did not even in form, propose the question of her guilt or innocence, but merely demanded a reason for her conduct. To hold that the reply of a slave to her overseer, under such circumstances, was testimony of the fact, thus impliedly asserted, because it could not be denied, would be exceedingly improper. The humane policy of our law, would exclude such evidence, coming from a white person, and the reason is much stronger for excluding it in the case of a slave.

The judgment of the court below must be reversed, but the prisoner will remain in custody for another indictment, or until discharged by due course of law.