## SEABORN AND JIM *vs.* THE STATE.

1. A slave may be convicted of murder for the homicide of another slave.
2. The statute requiring that not more than twenty, nor less than ten days, shall elapse between the time of sentence and execution, is directory merely; and if more than twenty days are allowed, the judgment of conviction is not thereby vitiated.
3. A slave's voluntary confessions of guilt are admissible evidence against him. The facts that he is a slave, and ignorant, and to some extent unacquainted with the consequences which may attend the making of such confessions, do not affect the admissibility of the evidence, but should be considered by the jury, in connection with the admissions, in ascertaining the weight to be given to them.

ERROR to the Circuit Court of Macon.
Tried before the Hon. E. Pickens.

The plaintiffs in error, who were slaves, were indicted for the murder of another slave. They demurred to the indictment, and their demurrer being overruled, they pleaded "not guilty." The committing magistrate was examined as a witness on the part of the State; and he testified, "that when he reached the place where the examination took place, there were several gentlemen there; that the two prisoners were sitting down, each chained with a padlock around his neck, and that they looked quite melancholy; that the owner of the prisoners and the owner of the deceased were present, and that there was a gun and a stick in the company; that the witness said to the prisoners, 'that it was a bad business, or a bad situation, they were in;' that Seaborn replied 'yes, it was; but that it was too late,' and shook his head; that in about ten minutes after this conversation, witness proceeded to the examination, and sent the prisoner Jim, with two men, one of whom had a gun, out of the hearing of the examina-

tion, and let the prisoner Seaborn remain; witness then asked Seaborn if he was guilty, or not guilty, and Seaborn replied that 'he was guilty;' witness then asked him to state how the killing occurred, and he replied," &c., detailing the circumstances of the murder. The prisoner Jim was afterwards examined apart from Seaborn, and his confession corroborated Seaborn's in every particular. The State also produced other proof corroborating the confessions of the prisoners, as to the place and manner of the killing. The counsel for the prisoners asked the court to exclude their confessions from the jury, but their motion was overruled, and they excepted. There was a verdict of " guilty " against both of the prisoners, and they were sentenced to be executed on the 19th December, 1851, which was about two months after their conviction.

JAMES E. BELSER, for plaintiffs in error:

1. The demurrer to each count of the indictment should have been sustained. The Penal Code has abolished the trial of a slave for murder according to the common law; and it is doubtful whether it has provided for such a trial in any of its provisions.—Clay's Dig. p. 472, §§ 1, 2 and 7.

2. The sentence of the court, on the 19th December, 1851, is illegal and void.—Clay's Dig. p. 475, § 16; ib. 438, § 1.

3. The confessions of the prisoners should not have been received. They were made under such circumstances, as were sufficient to exclude them.—State v. Clarissa, 11 Ala. Rep. 61, 62; State v. Phelps, 11 Verm. 116.

4. The confessions were made before the owner of the slave, and also a magistrate, without giving to the prisoners any warning, and they should be held bad on this ground.—Roscoe on Ev. 43.

5. The court should keep it in mind, that the plaintiffs in error here are slaves, and not white persons, and that the same rules on the subject of confessions should not be strictly applied to the former, that are to the latter.

M. A. BALDWIN, Attorney General, for the State.

1. To exclude confessions of guilt, there must appear to have been held out *some fear of personal injury*, or some hope of personal benefit. In this case there was neither.—The

State v. Guild, 5 Halst. 182; 1 Greenl. Ev. 265 and 266; 10 Pick. 490; Hawkins v. The State, 9 Mo. 190; Wharton Cr. Law, 186; Roscoe, 40; State v. Potter, 18 Conn. 166.

2. An examination by a magistrate by questions and answers is held good, if free from promises and threats.—Rex v. Ellis, Ryan & Moody, 432; The State v. Freeman, 1 Spears, 57.

3. It is no objection to confessions properly obtained, that the party charged is in jail, or otherwise legally confined.—Com. v. Mosler, 4 Barr, 264; 2 Car. & P. 418; 1 Wheeler Cr. Cas. 392.

4. A confession, though extorted, may be received, where many circumstances are in proof which agree with the several disclosures.—1 Greenl. Ev. 267; State v. Moore, 1 Hayw. 482; Hudson v. State, 9 Yerger, 410.

5. Questions which are calculated to entrap, or which assume the guilt of the prisoner, are inadmissible, and on this rule the decision in the Clarissa case (11 Ala. Rep.) is founded.—Com. v. Mosler, 4 Barr, 265.

CHILTON, J.—1. The demurrer to this indictment was properly overruled, and the ground upon which it is questioned, namely, that a slave cannot be convicted of murder for killing a slave, is opposed to the statute, which declares that every slave who shall be guilty of murder, &c., shall suffer death.—Clay's Dig. 472, § 2. That murder may be committed in the homicide of a slave, is not questioned; and here the general term, "murder," is used without regard to whether the person murdered was a freeman or slave.

2. That the sentence was to be executed after the expiration of twenty days from the time of their conviction, does not vitiate the judgment. The statute requiring that not more than twenty nor less than ten days shall elapse, between the time of sentence and the execution, is clearly directory.—Dig. 474, § 16.

3. I have looked into the books with much care, to see if there was any principle or precedent which would justify the court in holding the confessions of these slaves inadmissible as evidence; but I have been unable to find either.

The facts that they were slaves, and ignorant, and to some

extent unacquainted with the consequences which may attend the making such admissions, go not to the admissibility of the evidence, but should be weighed by the jury in connection with the admissions in ascertaining the weight to be given them.

Upon a careful examination of this record, it is impossible to resist the conclusion that the admissions of guilt of each of the prisoners were voluntarily made, and it is equally clear from the corroborative proof, that the admissions were true. That they were made to the examining magistrate, who did not previously caution them, as he undoubtedly ought to have done, as to the effect of such admissions, would not justify the court in excluding them. We find no case excluding confessions for want of such caution. The question in such cases is, were the confessions voluntary, and uninfluenced by fear of personal injury or the hope of some benefit.

We do not agree that the remark made to the prisoners by the justice, "that it was a bad business or a bad situation they were in," was such as assumed their guilt, and rendered their subsequent confessions improper. He doubtless alluded to their being in custody upon the charge, and his remark was rather expressive of sympathy for their unfortunate condition, than as eliciting any response inculpating the prisoners. The facts of this case are wholly unlike the facts in Clarissa v. The State, 11 Ala. Rep. 61.

The court are unanimous in holding the evidence admissible, and that the conviction is entirely regular, as shown by the record.

The judgment is therefore affirmed; and as the sentence of conviction has been suspended that the case might be here reviewed, it is adjudged that the prisoners be executed on Friday the second day of April next, between the hours of 10 o'clock A. M. and 4 o'clock P. M., of that day, by being hanged by the neck until they are dead.