# REPORTS

## OF

## CASES ARGUED AND DETERMINED

## AT JUNE TERM, 1854.

———————

## WYATT, a slave, *vs.* THE STATE.

1.  A slave's confessions of guilt to his master, when elicited or influenced by the fear of punishment or the hope of some benefit to be gained by making them, is not admissible evidence against him ; and his subsequent repetition of them before the examining magistrate, if made in the presence of his master, is equally inadmissible, unless it is clearly shown that he was free from the least apprehension of punishment from his master as a consequence of his recantation.
2.  Therefore, in this case, the slave's confessions to his master were excluded, because the latter had said to him, "Boy, these denials only make the matter worse" ; and the repetition of them before the examining magistrate, in the presence of the master, was also ruled inadmissible, the justice having failed to caution him as to their effect.

ERROR to the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THE plaintiff in error was indicted for burning his master's gin-house, was convicted, and sentenced to death. His confessions of guilt to his master, and afterwards to the examining magistrate, were admitted in evidence on the trial below, against the prisoner's objections ; and he excepted to this ruling of the court. Other errors were assigned and insisted on in the argument ; but it is deemed unnecessary to notice them, as the judgment was reversed solely on account of the

2

error in receiving the prisoner's confessions in evidence against him.

S. D. HAYS and WILLIAM M. MURPHY, for plaintiff in error :

1. The court below erred, in admitting as evidence the confessions of the prisoner, as testified to by the prosecutor, his master, made while he was confined by his master.   In order to entitle a confession to any weight, or to render it admissible in evidence, it must be shown to have been perfectly free and voluntary, "without the hope of reward or fear of punishment" ; any hope or fear, however trivial, is sufficient to exclude them, for the law cannot determine the amount of influence which they might have had on the prisoner's mind.— 1 Phil. Ev. 111, and notes 205, 212 ; 1 Green. Ev. § § 214, 219 ; 2 Stark. Ev. 36 (48) ; Roscoe's Cr. Ev. 36, 37 ; Whar. Am. Cr. Law, 252 (185) ; State v. Fields, Peck's (Tenn.) R. 140 ; 1 Wheeler's Criminal Cases, pp. 68, 69.    These authorities show, that this confession cannot be presumed to have been voluntary, but was prompted by the fear of punishment if he denied, and the hope of being released if he confessed.

2. The court erred, also, in admitting in evidence the prisoner's confession to the justice, as detailed by his master ; because, having once confessed, under the circumstances, to his master, he is presumed to have been actuated by the same motives, hopes, or fears, when subsequently confessing in the presence of one (his master) whom he feared, and to whom he had made the previous confessions ; and this influence shall be presumed to have continued until palpably done away with.— Roscoe on Evidence, pp. 41, 42 ; 1 Phil. Ev. 111 ; 2 *ib.* 207 ; 2 Stark. Ev. 36; 1 Green. Ev. § § 225, 226; Serpentine v. The State, 1 How. (Miss.) R. 256 ; State v. Clarissa, 11 Ala. 57 ; Van Buren v. The State, 24 Miss. 516 ; Whar. Am. Cr. Law, 257 ; Peter v. The State, 4 Sm. & Marsh. 31.

3. The court erred, in admitting as evidence the slave's confessions to his master ; for a slave's confession to his master, or to any one who has authority over him, cannot be presumed to be of that free and voluntary character which alone entitles it to be received as evidence.   If the confessions of a hireling to his master or employer, and the confessions

of a wife to her husband, are inadmissible, upon the ground of fear, or hope, or duress, certainly, for much stronger reasons, should the slave's confesssions to his master be excluded.— 1 Green. Ev. § 222.

P. T. SAYRE, for the Attorney General, *contra :*

The expressions, "Well boy, you have done it," cannot be connected with the confessions which were subsequently made by the prisoner. No force was given to them, and no inference was deduced from them, unfavorable to the prisoner. The common inference of guilt from silence does not appear to have been made. No punishment had been inflicted, nor was threatened. Even, therefore, under the circumstances presented in this bill of exceptions, if the question assumed the guilt of the prisoner, his confessions in answer to it would have been evidence.—Carroll v. The State, 23 Ala. 38.

The prisoner, after this, volunteered to confess, but his owner absolutely declined to hear him. Says he, " Master, I want to talk with you"; to which the reply was, "I don't want to hear a word from you." This shows that no effort, up to that time, had been made to extort any confession from him. Up to this period, no promises, or threats, and nothing approximating to either, had been used ; this is clear from the bill of exceptions. It purports to set out all the conversations that had occurred between the master and the prisoner ; and we find nothing, in the slightest degree tending to show, that an undue influence had been resorted to to get a confession.

The master, so far as the bill of exceptions shows, had not, up to this time, said anything which could be tortured into harshness ; he had only used means proper for the safe-keeping of the prisoner. At the third interview we find him using the words, " these denials only make the matter worse." The condition of the prisoner was changed ; he had been using violence on himself. We cannot tell in reference to what this expression was used. The bill of exceptions purports to set out all the testimony on this point, and it fails to show that any denials had been made in reference to burning the gin-house. The rule is, that a bill of exceptions must be construed most strongly against the party excepting. We must, therefore,

conclude that it was as to something else that the denials were made.—State v. Goodrich, 19 Ver. 121.

The true rule is, to ascertain whether the confession was made under circumstances calculated to render it untrue.— Carroll v. The State, 23 Ala. 38 ; State v. Grant, 22 Maine 173 ; Peter v. The State, 4 S. & M. 37. The bill of exceptions, in this case, shows, that the prisoner manifested great anxiety to say something about it when first arrested, and did tell all about it the first time his master would permit him to speak.—18 Conn. 180.

The confession made to the magistrate was admissible ; it was unlike the confessions in the case of Clarissa, 11 Ala. 60, and of Spence v. The State, 17 Ala. 197.

CHILTON, C. J.—In considering cases of the kind before us, where the master or owner of the slave is introduced to prove his confessions, we must bear in mind the relation existing between them, of ownership and dominion on the part of the master, and subjection and dependence on the part of the slave. This relation, in many cases, may be supposed to exert an influence over the mind of the slave, with respect to such admissions, when considered in connection with declarations made by the master, which might not attach to declarations made by strangers or persons having no connection with the slave in any way.—1 Green. Ev. § 222. The slave naturally looks to his master for protection : he is accustomed to throw himself upon his leniency and mercy, and, it may be, by honest confessions of his guilt, to mitigate the chastisement which may await him as the punishment for his misconduct.

Keeping in view this relation, it is proper that we should examine with caution, whether the confessions of guilt made by a slave in interviews had with his master, or one having dominion over him, were not elicited or controlled by the relation, and predicated upon the fear of punishment or injury, or upon the hope of some benefit to be gained by making them. Before confessions can be received in evidence, it is necessary for the State to show that they were *voluntary*. The course of practice, says Professor Greenleaf, " is, to inquire of the witness, whether the prisoner had been

told that it would be better for him to confess, or worse for him if he did not confess, or *whether language to that effect had been addressed to him.*"—1 Green. Ev. § 219.

The examples given in illustration of the rule, will serve to show that the confessions in this case fall directly within the principle of exclusion. Thus, where the prosecutor said to the prisoner, "If you will tell me where my goods are, I will be favorable to you"; so, also, "It is no use for you to deny it, for there are the man and boy who will swear they saw you do it"; again, the prosecutor said to the prisoner, "He only wanted his money, and if the prisoner gave him that, he might go to the devil if he pleased"; in another case, where he said, he would be obliged to the prisoner if he would tell all he knew about it, adding, "if you will not, of course we can do nothing," meaning nothing for the prisoner; so, too, where the officer of the police said to the prisoner, "Now be cautious in the answers you give me to the questions I am going to put to you about this watch": in all these cases the confessions were excluded.—1 Green. Ev. § 220 and notes.

The defendant, in this case, must have known for what he was arrested. His master's gin-house had been burned the night of the day on which the prisoner had run away from his master. Suspicion had settled down upon him as the guilty agent, and the foreman, with other slaves, had been directed to watch and capture and take him, dead or alive. Shortly thereafter, viz., on the second or third night, the prisoner was taken, and brought to his owner, who said, "Well, boy, you have done it now"; thus, evidently assuming his guilt. Having confined the prisoner, the master went off; but as he was leaving, the prisoner said, "Master, I want to talk with you;" the answer was, "I don't want to hear a word from you." The master, returning next morning to where he had left the prisoner bound, found him tied as he had left him, but discovered that he had cut his hands with a razor in an attempt to sever the rope with which he was bound, and was bleeding from the wound. The master then said to him, "Boy, these denials only make the matter worse"; to which the prisoner replied, "Master, I have done wrong." The witness then asked him, "What have you done"? to which he answered, "I burnt your gin-house." On the same day,

the witness (the master) carried the slave before a justice of the peace for examination and commitment. Upon inquiry of the justice made of the master as to what the slave had done, he replied, " He has burnt my gin-house ; examine him for yourself." The justice then examined the prisoner in the presence of the master, and the same confessions were made that had been made in the morning to the master.

It is said, in the affidavit made to support the substituted bill of exceptions, that the master, after detailing the conversation had with the slave, and his confessions, stated, that when he said " these denials only make the matter worse," he alluded to the fact, that the slave had previously denied having a knife ; but it is not shown that he thus explained it to the prisoner, who might fairly have construed the remark as general, and have very naturally concluded that confessions of his guilt would make the matter better. We do not think the proof shows any intention on the part of the master to extort from the prisoner confessions, or to entrap him by assuming his guilt; on the contrary, his conduct appears to have been dispassionate and ingenuous ; but he was doubtless unapprised of the caution and guards which the law throws around persons thus situated, or he would have advised the slave of the effect of his proposed confessions, especially since what he said to him as to the effect of his denials was calculated to excite in him the hope that a confession would make the matter better.

The confessions to the master, we think, were clearly improperly received; and under the rule as declared in Clarissa v. The State, 11 Ala. 57, the same inducement to confess continued, and must be regarded as vitiating those made before the justice of the peace. In such case, before the subsequent repetition of the confession before the justice can be received, especially when made in the presence of the master, the influence of the former inducement, and all fear of punishment from a recantation of his confessions, *must be* " *totally done away with.*" If it be competent, under such circumstances, to render the repetition of the confessions legitimate proof, the greatest precaution should be used, so as to disabuse the mind of the prisoner, and he should be fully charged as to the effect of such confessions. Ordinarily, we

would not exclude confessions which are clearly shown to be voluntarily made before a magistrate, for the sole reason that the justice failed to caution the prisoner (20 Ala. 15) ; but where confessions have once been made by a slave to his master, under circumstances which will render them improper as evidence, the utmost precaution should be taken to advise him of their nature and effect, by the examining officer, and it must be clearly shown that he was free from the least apprehension of punishment from his master as a consequence of his recantation. Even then we should regard it unsafe to convict the prisoner upon such subsequent confessions, if wholly uncorroborated by other proof.—Clarissa v. The State, *supra.*

It follows from what we have said, that the sentence of conviction must be reversed, and the cause remanded, that the prisoner may again be tried; and it is ordered that he be retained in custody to await such further trial.