## DINAH (A SLAVE) *vs.* THE STATE.

[INDICTMENT FOR ATTEMPT TO POISON.]

1. *Admissibility of confessions.*—The confessions of the prisoner in this case, who was a slave girl, made to the person who arrested her while a runaway on the day after the commission of the alleged offense, having been ruled out by the court, on the ground that they were extorted from her by fear and threats; *held*, that a repetition of such confessions, made three weeks afterwards, while she was confined in jail, to the jailor's son, and also to members of the grand jury who were examining the jail, in reply to questions asked by those persons, was also inadmissible as evidence, because it did not appear that the influence under which the first confession was made had been removed.

Dinah (a slave) v. The State.

From the Circuit Court of Lowndes.
Tried before the Hon. Nat. Cook.

The indictment in this case, which was found at the October term of said court, 1863, charged that the prisoner, "a slave of G. B. Murphree, unlawfully and with malice aforethought, with intent to kill and murder Amanda Murphree, a white person, did administer to, and cause the said Amanda to eat and swallow, a large quantity of the seed of the Jamestown weed, it being a deadly poison." The prisoner was duly arraigned, pleaded not guilty, and was tried at the April term, 1864; when, as the bill of exceptions shows, the following proceedings were had:

"The State proved, by Mrs. Murphree, that the prisoner belonged to her husband, and, at the time of the commission of the alleged offense, on the 24th September, 1863, was the nurse of her two children, Amanda, who was between five and six years old, and a younger one; that it was the duty of the prisoner to feed said children, and take care of them; that she fed them on the evening of said 24th September, in the presence of witness, at a side-table; that about two hours after the children were put to bed, Amanda became very sick; that a physician (Dr. Sellers) was sent for, who examined Amanda, and gave her an emetic, when she vomited, and ejected with her food more than a drachm of the seed of the Jamestown weed; that said physician gave it as his medical opinion that the child was poisoned by it, and that the quantity was sufficient to kill. Mrs. Murphree further stated, that according to her best recollection, though she was not very certain, she told the prisoner, or gave her to understand, that she would be whipped for it, and that she had poisoned the child. The prisoner ran away soon after the child had thrown up the seed, and was caught on the evening thereafter, about six o'clock, by one Carr, who testified, that he met her on the roadside, and called to her, but she ran off; that, catching her, he asked what she ran away for; that she replied, 'for her meanness;' that he then slapped her on the face several times severely, and told her she should tell him what she had run away for; and that she then said, 'for poison-

ing her mistress' child.' The court excluded this evidence from the jury, on the prisoner's objection, on the ground that the confession was not freely and voluntarily made, but was obtained under force and duress. The State attempted to prove similar confessions, afterwards made, to the witnesses Sellers and Simmons; which the court also excluded, on the same grounds, and because they were made after the confession to Carr, and in the presence of said Carr and her master.

" The evidence being closed on the part of the prosecution and the defense, and that fact being announced to the court, the court took a recess, and adjourned the argument. When the court met again, the State moved to introduce two witnesses, Garrett and McGrath ; and the court allowed the motion, against the prisoner's objection. Garrett, whose mother was the jailor, testified, that he was in the habit of going to the jail to feed the defendant while she was confined there ; that he asked her one time while there, ' what she was put there for;' that she replied, 'for poisoning her mistress' child;' that he then asked her if she had done so, and why she had done so ; and that she replied, ' she did it, but was put up to do so by an old negro woman,' and ' that she wanted to get rid of nursing the child and putting it to sleep.' The witness said, that this conversation took place about three weeks after the charge of poisoning, and that no one was present at the time but himself and the defendant. The defendant objected to this evidence, and moved the court to exclude it from the jury, on the ground that said confession was not made freely and voluntarily, and because it was made after said first confession to Carr, and while the defendant was in prison. The court overruled the objections, and allowed the said testimony to go to the jury; and the defendant excepted.

" McGrath testified, that he went to the jail, during the fall term of said circuit court, 1863, when the grand jury were talking to the defendant, and heard her say, that she had poisoned the child, but was put up to do so by an old negro woman ; and that he did not hear all the conversation between the jurors and the defendant. The defendant objected to this evidence, and moved the court to exclude

23

it from the jury, because said confession was not made freely and voluntarily, and because it was made after said first confession to Carr, and while the defendant was confined in jail. The court overruled the objections, and allowed the said confession to go to the jury as evidence; to which the defendant excepted."

The rulings of the court in admitting the confessions of the prisoner, as above stated, are the only matters to which exceptions were reserved.

No counsel appeared in this court for the prisoner.

M. A. BALDWIN, Attorney-General for the State, cited *Aaron v. The State*, 37 Ala. 106.

PHELAN, J.—The confessions of the girl Dinah, made to the witness Carr, were ruled out, and properly so, we think, although the circumstances of the case, and the nature of the confession, lead strongly to the belief that she then made a true confession. But she had been, previous to her running away, threatened by her mistress with a whipping; and when Carr met her, he slapped her severely in the face, and demanded that she should tell him why she had run away. He then, so far as we are informed, had no knowledge of the fact that she was suspected of having poisoned her mistress' child, and, when he commanded her to tell him why she had run away, had no expectation of eliciting a confession of the kind she made about poisoning the child. Such a state of the case cannot fail to impress us with the belief that the fact was as the girl confessed. But, still, it cannot be denied, that the confession was not a *voluntary* confession, but was one extorted by *fear*, and made under the influence exerted over her by the words and manner of the witness Carr, and of the severe slapping which he tells us he then inflicted upon her; especially, when taken in connection with what her mistress had previously said when she accused her of poisoning the child, and told her that she would be whipped for it. But about three weeks afterwards, the prisoner made the same confession to the witness Garrett, the son of the person who kept the jail, and who was in the habit of carrying her

Dinah (a slave) v. The State.

her food; and also in the presence of the witness McGrath, at the time when she was being questioned by the grand jury. These latter confessions the court below admitted; and the correctness of this ruling of the court presents the question we are now called upon to consider.

No principle is better established, or meets with more general approbation, than that a confession of guilt, by any person accused, is not to be received, unless the same shall appear to have been freely and voluntarily made, uninfluenced by hope or by fear, by persuasion or intimidation. Greenl. on Ev., §§ 215 *et seq.* The slightest inducement held out to such a person, by any one having authority—as to say, "he had better confess," or the like—has been uniformly held to vitiate the confession. The court cannot undertake to measure the nature, character, and constitutional firmness or weakness of each individual who may invoke the benefit of the rule; and therefore, it is wisely and properly settled, so as as to meet the cases of those who are weak, or ignorant, and who might be tempted, or seduced, or overawed, by influences which could not affect the minds of the more intelligent, or more intrepid. It is under the force of these principles that we agree in the correctness of the ruling of the court below in excluding the confessions made to Carr.—2 Phillipps' Ev. 235; *Rex v. Kingston,* 4 C. & P. 387.

But another principle, which rules in the case of confessions, is this : That where confessions have once been shown to have been made under the influence of hope or fear, no subsequent confession of the same party shall be received, unless it is satisfactorily shown that the influence under which the first confession was made had been *removed,* so as to give assurance that the mind of the party is no longer affected by it, but is in a condition to make, according to the fundamental rule, a free and voluntary confession; and it is the duty of the State to show this. 2 Russell on Crimes, 648 ; Greenleaf on Ev. § 221.

The question arises, then, do the facts and circumstances of this case satisfactorily show, that the girl Dinah, at the time she made the confession to the witness Garrett, and in hearing of the witnes McGrath, was no longer affected by

the threats of her mistress, or the conduct of Carr at the time she made the first confession. It is true, that some time, say three weeks, had elapsed since she had been threatened by her mistress, and severely slapped by Carr; and that no persuasion was exercised, or inducement held out, to make her confess. Still, she was questioned, and asked why she was put in jail. She does not seem to have opened the conversation herself. And here it is very proper to consider her age and condition. She seems to have been a young negro girl, and she was a slave. To her mistress it does not appear that she made any confession when she was accused, but, when threatened, ran away. To Carr, when he slapped her, and demanded to know why she had run away, she stated, that she ran away "for her meanness;" and, upon receiving a severe slapping in the face, acknowledged, that it was "for poisoning her mistress' child." To the witness Garrett she gave the same account of herself, only adding that she had been put up to it by an old negro woman. A girl of this age, and a slave, having made the confession she did to Carr, would always be under the temptation to repeat the same substantially, from a fear that she would be punished for falsehood, if she should materially deviate from the statement she had first made. In such a case, even the presence of her master, and an assurance from him that she should not be punished, even if she varied her statement, if the truth so required, would hardly be sufficient to make a re-confession of her guilt testimony against her. Her previous confession, her *status* as a prisoner and a slave, and the expectation that, at some time, her master would resume his dominion as a master, would be circumstances still to be considered; and it is doubtful whether even such an assurance from him would leave her in a condition to make such a free and voluntary confession as the law will accept.

The cases of *Clarissa v. State*, (11 Ala. 57,) and *Wyatt v. State*, (25 Ala. 9,) lay down the rule in respect to confessions once made by slaves, and afterwards repeated, which we think it wise to follow, so far at least as to require that it shall clearly appear that the original influence, under which the confession was first made, has been wholly

removed, before any subsequent confession shall be received. As we are not satisfied from the facts as given in the record, that the mind of the slave Dinah was wholly uninfluenced by the circumstances under which she made the first confession, we hold that the testimony of the witnesses Garrett and McGrath was improperly admitted.

The judgment is reversed, and the cause remanded.