(No. 16212.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GORDON CARMICHAEL *et al.*—(CLINT PETTY *et al.* Plaintiffs in Error.)

*Opinion filed December 16, 1924.*

1. CRIMINAL LAW—*general rule as to when confession is evidence against a co-defendant.* A confession made by one defendant after the commission of a crime cannot be admitted in evidence against a co-defendant unless made in the presence of the co-defendant and assented to by him.

2. SAME—*when a confession is not admissible against a co-defendant—instruction.* Where several defendants are tried together on a charge of murdering a police officer, a confession by one of them out of the presence of the others and implicating them in the perpetration of an unlawful act is not admissible without an instruction limiting its application to the defendant who made it; and the giving of such an instruction, with the other instructions, at the close of the evidence does not cure the error.

WRIT OF ERROR to the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

JOHN G. FRIEDMEYER, MURPHY & HEMPHILL, W. E. FAIN, and JESSE PEEBLES, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, LESLIE M. HARLAN, State's Attorney, and JAMES B. SEARCY, (ELBERT N. NEVINS, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Gordon Carmichael, Joseph Shaheen, Thomas Harris, Clint Petty and Tony Sgro, all minors, residing in the city of Springfield, were indicted at the January, 1924, term of the circuit court of Macoupin county for the crime of murder. They were tried and found guilty of manslaughter. Carmichael withdrew his motion for a new trial and was sentenced to the penitentiary. The other defendants sue out this writ of error.

At about seven o'clock on Sunday evening, February 3, 1924, the plaintiff in error Harris, who was then sixteen years of age, took from the private driveway of Ellinger & Kunz, undertakers in Springfield, a seven-passenger Buick sedan automobile, which he drove to a point a short distance from a pool-room at Ninth and Miller streets. This pool-room was near the homes of the plaintiffs in error except Harris, and all of them, with Carmichael, frequented it. On the evening in question Harris entered the pool-room and found Shaheen and Petty there and asked them if they wished to take a ride. They assented. He then requested them to wait a few minutes, absented himself, and after his return they walked across the street to the automobile and met Carmichael, who, upon Harris' invitation, joined them. Harris took the driver's seat and the others occupied the rear seat. They drove to Enos avenue and Eighth street and there found Sgro, who, also invited to ride, occupied the front seat with Harris. They drove about Springfield and Washington Park, then to South Grand avenue, where Sha-

heen saw park policeman Kelly, with whom he was acquainted, and finally south on the St. Louis road, without stopping, until they reached Virden, in Macoupin county, about twenty-five miles distant from Springfield. The paved road came to an end at Virden. It was a cold and rainy night and the dirt roads were muddy. After purchasing gasoline at a filling station in Virden they started back north on the road over which they had come. Shortly after the plaintiffs in error had left Springfield, Gordon Swettart, a police officer of that city, accompanied by a friend, Miss Gussie VanFang, after talking with park policeman Kelly, started south over the same road in a Ford sedan. Kelly rode with them as far as the village of Chatham. Swettart and Miss VanFang, after reaching Virden, drove two or three blocks beyond the point where the pavement ended and then drove back again. When they reached the pavement on their return they saw a Buick sedan parked in a side road, facing west. They continued north a few blocks and then turned south again to the end of the paved road, at which point they discovered that the Buick car, which they had before observed in the side street, had turned north, but after going a short distance had stopped on the right side of the road with the two left wheels on the concrete pavement and the other two in the mud. The accelerator on the Buick car stuck, the plaintiffs in error testified, and Harris, who drove the car, could not control the speed of the engine. He stopped the car and Sgro stepped out through the right front door and lifted the hood to see if he could locate the impediment. While Sgro was out of the car Harris pulled the foot accelerator from the inside and it again operated freely. Just as Sgro re-entered the car Swettart approached from behind, stepped upon the running-board on the right side, near the front of the car, leveled his revolver at Harris and commanded him to stop. Harris stopped the motor, and at that instant Carmichael from the rear seat pointed a pistol at Swettart and said,

"Too late, buddy; I've got it on you." Swettart then stepped off the running-board and opened fire, according to the testimony of the plaintiffs in error. He shot two or three times on the right side and then ran around to the rear and fired, apparently emptying his gun in doing so. While he was shooting, Carmichael returned the fire through the windows of the car, first from the side and then through the rear glass. One of the shots, probably the last one fired by Carmichael, struck Swettart in the chest. He walked and staggered back toward his own car, but before reaching it fell over to the left side of the road. Shortly afterwards he was taken in a passing automobile to a physician's home, but he died on the way. During the shooting between Swettart and Carmichael the plaintiffs in error dropped to the floor of the car to avoid being struck by bullets. After the second shot was fired Sgro crawled out of the automobile, raised his hands above his head and exclaimed, "My hands are up, mister!" He then ran around to the middle of the road in front of the car, lowered his hands and started running. According to his testimony one shot was fired after him. He continued north on the road for a short distance, saw the light of an interurban car, went east toward the tracks and north to the village of Chatham, where he slept for a few hours, and then walked on to his home in Springfield, which he reached early Monday morning. He was soon arrested and placed in jail at Springfield. After the shooting had ceased Carmichael and the other three plaintiffs in error left the automobile and ran east, though not all together, through a field, to the Chicago and Alton railroad tracks, on which they walked north to Thayer, where Shaheen and Harris boarded a north-bound interurban car. The conductor had been notified of the shooting of the officer. Shaheen and Harris told him that they had no money, and because he suspected them he permitted them to ride free. They were taken from the car at Chatham and surrendered to police officers awaiting them

there. Later they were taken to Springfield. Carmichael and Petty tried to gain a footing on the outside of the car boarded by Shaheen and Harris, but not being able to do so they walked back to some coal chutes in or near Virden, at which they waited for a freight train on the Chicago and Alton railroad. They boarded one about daylight, rode in a lumber car and arrived at Springfield about noon on Monday. Upon reaching home they read an account of the killing of Swettart in the newspaper, and after eating lunch they called police headquarters by telephone and inquired whether they were wanted. The answer was in the affirmative, and shortly afterwards they were arrested. Each of the plaintiffs in error except Sgro made a written statement to the police at Springfield. On the afternoon of the day following the shooting all of the plaintiffs in error were taken to the jail at Carlinville, where they remained until the trial.

The prosecution offered in evidence the statements made by Carmichael, Shaheen, Petty and Harris. They were admitted over the objections of the plaintiffs in error. Each of them who made such a statement did so out of the presence of his associates. Their admission, it is contended, was highly prejudicial to the plaintiffs in error and constitutes reversible error. The statements made by Shaheen, Petty and Harris were to the same general effect. They set forth, among other things, that Carmichael fired all the shots. Carmichael's statement, however, differed substantially from the others. In it he said that Shaheen had done the shooting and that the purpose of their trip was to hold up a road-house near Virden. No other statement contained any reference to a road-house or any admission that the purpose of the trip was unlawful. Carmichael testified that he had made no such statement concerning their purpose in driving to Virden and that the statement in that respect was erroneous. There was testimony that Carmichael had requested Petty, before their apprehension, to charge Sha-

heen with the shooting, but on the trial Carmichael admitted that he had fired all the shots from the automobile. At the time the statements were admitted as part of the prosecution's case there was no instruction or explanation by the judge to the jury that each statement should be taken only as evidence against the defendant who made it. Such an instruction was, however, given in the course of the instructions to the jury at the conclusion of the trial.

A confession made by one defendant after the commission of a crime cannot be admitted in evidence against a co-defendant unless made in the presence of the co-defendant and assented to by him. (*People* v. *Buckminster,* 274 Ill. 435; *People* v. *Temple,* 295 id. 463; *People* v. *Cardinelli,* 297 id. 116.) A person charged with crime can confess only for himself. Carmichael's confession, repudiated in part by him on the witness stand, that he with the plaintiffs in error intended to rob a road-house near Virden and that Shaheen fired the shots which resulted in Swettart's death, could only, in its effect, be highly prejudicial to the plaintiffs in error. If from the competent evidence admitted the jury doubted that the plaintiffs in error were guilty, it would be difficult, if not impossible, to remove the impression of guilt credited by Carmichael's confession that they had all embarked upon a criminal enterprise. Such an impression would naturally be deep-seated and abiding, and it could scarcely be removed by an instruction, among many others, given long after the confession, incompetent and prejudicial as to them, had been admitted. Carmichael's confession, so far as the plaintiffs in error are concerned, was inadmissible when it was offered and the instruction given did not cure the error of its admission. *People* v. *Sweeney,* 304 Ill. 502; *People* v. *Buckminster, supra.*

For the error indicated the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*