THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELSIE SWEETIN, Plaintiff in Error.

*Opinion filed April 20, 1927.*

1. CRIMINAL LAW—*State's attorney should not use unlawful means to obtain confession.* The State's attorney is the representative of all the people, including a defendant, and his official oath requires him to safeguard the constitutional rights of a defendant the same as those of any other citizen, and he should sedulously refrain from attempting to obtain a confession from a defendant by unlawful means.

2. SAME—*in absence of contrary proof, second confession is presumed involuntary if the first one was improperly obtained.* Where an original confession is involuntary or secured by improper means, subsequent confessions of the same crime, though made to persons other than those to whom the original was made, are not admissible in evidence unless it appears that from lapse of time, or otherwise, the influence which induced the original confession had been removed and the party confessing was no longer dominated by such influence, as the presumption is, in the absence of proof to the contrary, that a second confession was the product of the same influence.

3. SAME—*court's discretion in granting separate trial is not arbitrary.* While it is generally a matter of discretion with the trial court as to whether a separate trial shall be granted one of two or more defendants, such discretion is not arbitrary but should be so exercised as to prevent injustice, wherever possible.

4. SAME—*separate trial should, as a rule, be granted where confessions of co-defendant are to be introduced.* As a general rule, where one or more defendants jointly indicted have made admissions or confessions implicating others, a severance should be ordered unless the State's attorney declares that such admissions or confessions will not be offered in evidence on the trial, as it is practically impossible to remove by instruction the prejudicial effect of the confessions against the defendants implicated.

5. SAME—*defendant is entitled to a fair and impartial trial.* All persons charged with crime are presumed to be innocent until proved guilty beyond any reasonable doubt according to the established methods of procedure, and the constitution guarantees to every person accused of crime, whether innocent or guilty, a fair and impartial trial, and no person should be condemned to penal servitude who has been deprived, over his objection, of such a trial upon competent evidence.

WRIT OF ERROR to the Circuit Court of Jefferson county; the Hon. JULIUS C. KERN, Judge, presiding.

R. E. SMITH, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOE FRANK ALLEN, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Elsie Sweetin, was indicted, tried and convicted, jointly with Lawrence M. Hight, for the murder of her husband, Wilford Sweetin, and she was sentenced to be imprisoned in the State penitentiary for a term of thirty-five years. She has sued out a writ of error from this court.

Plaintiff in error, aged thirty-two, and her husband, a coal miner, aged forty-one, were residents of the village of Ina and attendants of the Methodist church, of which her co-defendant, Lawrence M. Hight, was pastor. On July 17, 1924, the Sweetins made a trip to Benton, where, among other things, they had ice-cream, after which plaintiff in error became sick and vomited. After their return home Sweetin became violently ill, vomiting, and suffering great pain in his stomach. Several physicians were called and diagnosed it as a case of ptomaine poisoning and treated him therefor. Sweetin would apparently get better and then worse. He died July 28, 1924. After his death a post-mortem was held and the physicians decided he had died from cirrhosis of the liver, for which he had been previously treated. There had been considerable gossip at Ina connecting the name of plaintiff in error with her co-defendant. On the 12th of September, 1924, the wife of Hight died, and her case was also diagnosed as ptomaine poisoning. On the 18th of September the body of Sweetin was taken up and several parts of the vital organs were

removed and sent to a chemist in Chicago to analyze, and according to his analysis sufficient arsenic poison was discovered to cause death. Whether this arsenic was administered prior to his death or whether it was the result of the embalming process used was a controverted question of fact in the case. On the same day as the second post-mortem the State's attorney, coroner and a constable visited the home of Hight and discovered a can containing arsenic, and he was arrested and taken to the Mt. Vernon jail.

On the trial a large amount of evidence was heard, consisting mostly of evidence as to Hight's mental condition, (his defense being insanity,) evidence tending to show the friendly relations between plaintiff in error and Hight, confessions of plaintiff in error and confessions of Hight, who seemed to be quite loquacious. The evidence did not show any actions of unlawful intimacy or any passion or infatuation on the part of plaintiff in error for Hight. The confessions are the evidence upon which the judgment of conviction, so far as this record is concerned, must be based.

About five o'clock P. M. on September 22, 1924, after Hight's confession, plaintiff in error was taken into custody by the State's attorney, a deputy sheriff and another without a warrant and taken to the jail at Mt. Vernon. She had been sick for some days prior thereto. At the jail she was examined by a physician, who was a deputy sheriff. He prescribed medicine, and this was administered to her during the night by another deputy sheriff. She was given supper and afterwards questioned by the State's attorney and a newspaper reporter until about midnight, when she was taken to the sheriff's office in the court house, where in her weakened condition she was subjected to questions by reporters and officials until about four o'clock A. M., at which time, by direction of the State's attorney, Hight was brought from the county jail and placed in the room with her and apparently they were left alone for a considerable time, although the officers and newspaper reporters were

listening in.   Up to this time she had maintained her inno-
cence of any complicity in the murder of her husband.   She
testified, and it is not contradicted, that Hight informed
her that he had confessed the crime, implicating her, and
that a mob was forming, and unless she made a confession,
or some statement that would satisfy the officers, the mob
would take them both out and hang them, but that if she
would make a statement to satisfy the officers they would
both be removed to places of safety until the excitement
had subsided.   Thereupon the State's attorney was called
in and she made and signed a typewritten statement.   After
hearing preliminary evidence the court properly excluded
this statement from the evidence upon the ground that it
was improperly obtained and was not voluntary.   (*People
v. Rogers,* 303 Ill. 578; *People* v. *Sweeney,* 304 id. 502.)
The State's attorney is the representative of all the people,
including a defendant, and his official oath requires him to
safeguard the constitutional rights of the defendant the
same as those of any other citizen, (*People* v. *Cochran,*
313 Ill. 508,) and he should sedulously refrain from at-
tempting to obtain a confession from a defendant by un-
lawful means.   The end never justifies the use of unlaw-
ful means.

After making the confession plaintiff in error was taken
to breakfast and then removed by the deputy sheriff, physi-
cian and a nurse to the jail at Salem.   That night, between
eleven and twelve o'clock, she was visited at the jail by a
woman newspaper reporter for the purpose of getting her
to duplicate the story which she had told to the State's
attorney.   This she did, and this alleged confession was
permitted to go in evidence over her objection.   On Sep-
tember 24, 1924, the father of the deceased, the State's
attorney and the wife of the State's attorney interviewed
plaintiff in error at the Salem jail about midnight, and in
this interview she repeated the statement which she had
formerly made to the State's attorney.   Upon the trial the

court admitted evidence of this confession over the objection of plaintiff in error. It is contended by plaintiff in error that the admission in evidence of these confessions was error.

Plaintiff in error testified, denying that she was in any way responsible for the death of her husband, and that in making her first confession she was influenced by her fear of mob violence, and that she had simply repeated what Hight told her was necessary for her to tell the officers to secure their protection and her safety, and that in making her later confessions at the Salem jail she was still under the same fear and believed it necessary to repeat her former statements to retain the protection of the officers. Where an original confession is involuntary or secured by improper means, subsequent confessions of the same crime, though made to persons other than those to whom the original was made, are inadmissible as evidence unless it appears that from lapse of time, or otherwise, the influence which induced the original confession had been removed and the party confessing was no longer dominated by such influence. (*People* v. *Spranger,* 314 Ill. 602.) If the first confession was coerced by intimidation, fear or other improper influence, the presumption would arise, in the absence of proof to the contrary, that a second confession was the product of the same influence. (*State* v. *Ellis,* 242 S. W. 952; 16 Corpus Juris, 722; *State* v. *Jones,* 54 Mo. 478; *State* v. *Brown,* 73 id. 631; *Lang* v. *State,* 189 N. W. 558; *Dinah* v. *State,* 39 Ala. 359; *Flamme* v. *State,* 171 Wis. 501; *White* v. *State,* 91 So. 903; 1 Greenleaf on Evidence, par. 221; *Commonwealth* v. *Sheets,* 197 Pa. 69; *State* v. *Wood,* 122 La. 1014; 1 R. C. L. 573.) In this case the evidence failed to show that the influences which confessedly rendered the first confession inadmissible as evidence had been removed, and the admission in evidence of plaintiff in error's subsequent confessions was therefore, in the condition of the present record, error.

Prior to the trial plaintiff in error filed her motion for a separate trial, supported by her affidavit, in which she stated, among other things, that her defense and that of Hight were antagonistic to each other and that much of the evidence against him would be incompetent and prejudicial as to her; that he had made false confessions to the State's attorney, newspaper men and others, out of her presence, implicating her; that Hight, while in jail at Nashville, was tried by a number of bishops and ministers of his church, at which time he made another false confession and accusation against her; that he was a minister of the Methodist denomination, and that he had made various statements to the bishops, presiding elders and other Methodist officials implicating her, and that the names of these persons were endorsed upon the indictment as witnesses; that since his arrest Hight, to get the favor of the State's attorney and other officials, became their willing tool and aided them in every way in his power to procure evidence against her, and that as the tool of these officials he was at one time taken to her room in the jail, where he made threats, used persuasion, and represented to her that there was a mob gathering and that she would be hanged unless she made some statement to induce the officers to remove them from the county; that while she was confined in jail at Salem, Hight, intending to injure and entrap her, wrote letters addressed to her which were brought to her by the State's attorney; that she was not present at any of the confessions made by Hight; that such confessions would be competent as to Hight but would be incompetent and prejudicial as to her. The motion was also supported by an affidavit of her attorney, to the effect that he was convinced that it was impossible to properly prepare and introduce the evidence in her defense unless a separate trial were granted; that he conscientiously believed the grounds of the motion to be well assigned, and that the same were made in good faith and to the end that the defendant might

receive a fair and impartial trial and not for delay. The court overruled the motion for a separate trial, and this action is assigned as ground for reversal.

When Hight was in jail he made many confessions and statements, both oral and written, in which he implicated plaintiff in error in the crime for which they were being tried, and much evidence as to these confessions was admitted as to Hight but excluded as to plaintiff in error. A sample of this evidence is that of the district superintendent of the Methodist church, Hight's immediate superior, who testified that he called upon him in jail and exhorted him as a Methodist pastor would exhort anyone who had done a wrong to do the right thing and get himself right with God, and that after a lengthy conversation Hight signed the following statement:

"Of my own free will I make the following statements to Rev. C. C. Hall: Mrs. Sweetin and I fell in love and we intended to get married. Made arrangements to put husband, Wilford Sweetin, and my wife, Anna Hight, out of the way. She asked me what to get, and I got arsenic. The arsenic I bought in Benton July 22 I gave to Mrs. Elsie Sweetin. I never gave Sweetin any arsenic. I said I did because I didn't want to give her away. And after his death it was up to me to put my wife away, according to agreement. I didn't intend to do anything until we moved, but after she got sick I gave her arsenic.

L. M. HIGHT."

The evidence showed that Hight had ample opportunity to administer poison to Sweetin had he so desired. Another sample was his statement to the sheriff, "She is just as guilty as I am." Plaintiff in error as a witness denied specifically all the allegations against her in these confessions. She denied infatuation for Hight, stating that while he had at times attempted to make love to her she had not reciprocated, but had informed him if he did not desist she would tell her husband and father; that she did not tell any person about his advances on account of his standing in the community, her friendship with his family, and the fact that he would soon be sent to a church elsewhere.

While it is generally a matter of discretion with the court as to whether a separate trial shall be granted, such discretion is not arbitrary but should be so exercised as to prevent injustice, wherever possible. While the court instructed the jury that Hight's confessions were not admissible as against plaintiff in error, such instruction could by no possibility eradicate the testimony from the minds of the jury. While theoretically the instruction withdrew the evidence from the consideration of the jury, practically the human mind is so constructed that inevitably the prejudicial effect remained therein. (*Rex* v. *Martin,* 4 Ann. Cas. 912; *People* v. *Carmichael,* 314 Ill. 460.) To obviate the evils arising from the possibility of the jury being misled by the confessions of a co-defendant, the rule is general that where one of several defendants jointly indicted has made admissions or confessions implicating others, a severance should be ordered unless the attorney for the State declares that such admissions or confessions will not be offered in evidence on the trial. Some of the cases have stated that, on the plainest principles of justice, if the prosecutor intends to use such confession the prisoner shall be tried separately. (*Queen* v. *Wier,* 3 Can. Crim. Cas. 351; *Rex* v. *Martin, supra; People* v. *Buckminster,* 274 Ill. 435; *People* v. *Rupert,* 316 id. 38; *People* v. *Carmichael, supra; White* v. *People,* 81 Ill. 333.) Plaintiff in error may be guilty, but she may be innocent. Upon this subject we express no opinion. The law does not provide one method for trying innocent persons and another for trying guilty persons, as all persons charged with crime are presumed to be innocent until proven guilty beyond any reasonable doubt according to the established methods of procedure. (*People* v. *Bimbo,* 314 Ill. 449.) The constitution guarantees to every person accused of crime, whether innocent or guilty, a fair and impartial trial, and no person should be condemned to penal servitude who has been deprived, over his objection, of such a trial upon evidence competent against him. Plaintiff in

error asked for a separate trial, and for the reasons stated in her affidavit it should have been accorded her.

The judgment of the circuit court is reversed and the cause remanded to that court.    *Reversed and remanded.*