Fernando Rivera ESCUTE, Petitioner, Appellant,

v.

Gerardo DELGADO, Warden of The Penitentiary of The Commonwealth of Puerto Rico, Respondent, Appellee.

No. 5543.

United States Court of Appeals
First Circuit.

Sept. 23, 1960.

Santos P. Amadeo, Rio Piedras, P. R., with whom Gerardo Ortiz del Rivero, Gilberto Concepcion de Gracia, San Juan, P. R., and Francisco Garcia Quinones, San Juan, P. R., were on brief, for appellant.

J. B. Fernandez Badillo, Solicitor Gen., San Juan, P. R., with whom Genoveva R. De Carrera, Asst. Solicitor Gen., San Juan, P. R., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is an appeal under § 1293 of Title 28 U.S.C., from a judgment of the Supreme Court of Puerto Rico denying a petition addressed to it for issuance of a writ of *habeas corpus*. The facts are not in dispute.

During the evening of July 16, 1943, Philip M. Houston's dead body with the head brutally beaten in was found beside his car parked near a beach in Santurce, Puerto Rico. About midday on July 21, five days later, the petitioner below and appellant here was taken into police custody for questioning with respect to Houston's murder. On four separate occasions during the afternoon, to different officers and at different places where he was held in custody, Rivera confessed to participation in the crime. There was never any credible evidence of coercion,[1] and Rivera does not now contend that he was subjected to any physical or psychological pressure during his incarceration or that any promises of any kind were made to induce him to confess.

About 4:00 or 4:30 in the afternoon of the same day the District Attorney and his stenographer arrived at the police station where Rivera was held to question him in order to determine whether there was probable cause to file an information charging him with the crime. Before questioning began the District Attorney warned Rivera of his rights as follows:

"You are accused of the crime of murder, consisting in that on July 16, 1943, and in Santurce, P. R., and together with El Pulga, you killed Philip M. Houston, a human being, with malice and premeditation. You are not obliged to testify and if you do testify, your testimony may be used against you when this case is heard. I wish to warn you that if you testify, your testimony must be free, voluntary and spontaneous, free from duress, threats or intimidation and without any promise to improve your condition as a defendant."

Immediately after this warning Rivera confessed again to the District Attorney. This time his confession was taken down in shorthand by the stenographer and when later transcribed Rivera signed it. The substance of the confession is covered by the following questions and answers:

"Q. Do you know a citizen nicknamed 'The Pulga'? A. Yes, sir.

---

1. The Supreme Court of Puerto Rico in People v. Rivera, 66 P.R.R. 207 (1946), to be mentioned presently, and again in its opinion in the case at bar, Rivera v. Delgado, Warden, etc., 80 P.R.R. 800 (1958), rejected such vague evidence of physical coercion as there was as wholly insubstantial.

"Q. How long have you known the Pulga? A. I met him about two months ago in the market place in Santurce and I saw him in the Municipal Jail, that is, in the cooler on Stop 8, jailed in.

"Q. On July 16, 1943, Friday of last week, what did you do during all hours of the day? A. That day I was locked in the cooler on Stop 8 serving a sentence and I came out at 10 o'clock in the morning and went to the market place of Santurce, where I met The Pulga at about 11 o'clock in the morning. We went up to the water bridge and from there we went to the Condado Vanderbilt and at the Condado Vanderbilt the Pulga asked for food at about twelve o'clock and they gave it to him and we both ate behind the hotel in front of the beach. From there we went along the Condado beach, walking towards Borinquen Park and in Borinquen Park we sat down to take some fresh air and we remained there until about three o'clock in the afternoon. Then we got up from there and went straight ahead and sat down where there are two walls in front of the beach and we remained there until about six o'clock in the afternoon. The Pulga told me, 'Let the people go away and let's remain sitting here a while longer', and we stayed there until seven o'clock. Later the Pulga remained seated and I kept on walking and The Pulga took a pipe from among some shrubs and was hitting a cocoanut and walking along the shore. Then, when we got to a wall in which there was a large pipe, we both sat down, the Pulga looking up and I looking towards the beach. We both lay down there to sleep. When we got to that place and before the Pulga hit the cocoanut with the pipe, we saw, close to the wall, where there is a pole and where we later sat down, an automobile facing the beach and on the other side of the automobile an American lying down.

The Pulga had told me that the one asleep there was an American. The right front door of that car was open and the American was lying down on an automobile seat cover, face up with his head towards the houses and the feet towards the shore. A short while later the American fell asleep and the Pulga told me, 'This man has dough', and said, 'Go there to the corner and watch out for any cops'. It was already about 7 o'clock at night, between dark and light, and I began to watch in the corner of Taft Street. I saw that the Pulga hit him three times with the pipe and then took out a wallet from the back pocket of the trousers and another small wallet, and gave me three dollars in one-dollar bills and told me, 'Beat it, I'm going to the Savoy now' and I went to Borinquen Park and from there I went home."

Efforts to locate "El Pulga," or even to identify him by his real name, having come to naught, an information was filed on September 21, 1943, in the former District Court of San Juan charging Rivera with the first degree murder of Philip M. Houston. At arraignment Rivera, who was then, and at every subsequent stage of the proceeding has been, represented by diligent and competent counsel, pleaded not guilty. A trial by jury followed at which he was found guilty and sentenced to life imprisonment. Rivera appealed to the Supreme Court of Puerto Rico which affirmed the judgment of sentence. People v. Rivera, 66 P.R.R. 207 (1946).

Rivera filed his present petition for a writ of *habeas corpus* in the Supreme Court of Puerto Rico on June 23, 1958. In it he raised some of the same points he had raised at his trial in the District Court and on his subsequent appeal. Nevertheless, the Supreme Court of Puerto Rico issued the writ, held a hearing and wrote an exhaustive and carefully prepared and documented opinion on the basis of which it entered the judgment denying the petition for *habeas corpus* from which this appeal has been taken.

338

The extensive briefs and the oral arguments cover a wide range. Actually, however, only two questions are presented, and both of them have to do with Rivera's right to representation by counsel at the time he gave his confession. These questions are: (1) whether under the Sixth Amendment or § 2 of the second Puerto Rican Organic Act known as the Jones Act,[2] Rivera was entitled as of right to representation by counsel when he confessed, and (2) whether the failure to provide Rivera with counsel at the time he confessed deprived him of his right to due process of law under either the Fifth or the Fourteenth Amendment, whichever properly applied at the time.

Johnson v. Zerbst, 1938, 304 U.S. 458, 468, 58 S.Ct. 610, 82 L.Ed. 1089, is authority for the proposition that if in any criminal prosecution in a federal court an accused is not represented by counsel and has not competently and intelligently waived that right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or liberty. And the Supreme Court of Puerto Rico in the instant case, Rivera v. Delgado, Warden, 80 P.R.R. 800, 805, 806 (1958), on the basis of cases cited, clearly held that § 2 of the Jones Act, supra, stood as a similar jurisdictional bar to any valid criminal conviction and sentence in the courts of Puerto Rico in 1944 when Rivera was tried, convicted and sentenced. But no case has been cited to us nor have we found any holding that an accused's right to counsel under the Sixth Amendment arises prior to the initiation of judicial proceedings. On the contrary, the Supreme Court of Puerto Rico has repeatedly held that there is no absolute constitutional requirement in that jurisdiction that an accused be represented by counsel prior to arraignment. Rivera v. Delgado, Warden, supra, at page 806 and cases cited. And, although we have found no decision of the Supreme Court of the United States squarely so holding, we infer from the many decisions of that Court considering the admissibility under the due process clause of the Fifth Amendment of confessions made in the absence of counsel before arraignment that until arraignment there is no right to counsel under the Sixth Amendment. Indeed, wo do not understand counsel for Rivera to contend otherwise. His argument is that the peculiar powers of district attorneys in Puerto Rico before the Constitution of the Commonwealth became effective on July 25, 1952, made a District Attorney's interrogation of Rivera a judicial inquiry and hence the first step in a "criminal prosecution," so that in consequence Rivera had the right under the Sixth Amendment and § 2 of the Jones Act to be represented by counsel when he confessed.

It is true that from 1902 to July 25, 1952, district attorneys in Puerto Rico were magistrates with power to determine probable cause, to issue warrants of arrest, and to fix and take bail. People v. Fournier, 77 P.R.R. 208, 240 (1954), and cases cited. But the law in Puerto Rico has long been clear that it is not essential to the validity of an information that it be filed in court by the district attorney only after he has held a preliminary examination and issued a warrant of arrest. People v. Travieso, 60 P.R.R. 518, 523 (1942); Rivera v. Delgado, Warden, 80 P.R.R. 800, 813 (1958), and cases cited. As the court said in its opinion on Rivera's appeal from the judgment of sentence, People v. Rivera, 66 P.R.R. 207, 211 (1946): "* * * neither the Organic Act nor our Code of Criminal Procedure provides,

2. It makes no difference which applies for so far as here material both are worded alike.

The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

Section 2 of the Jones Act, 39 Stat. 951, provides:

"That in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense * * *." 48 U.S.C.A. § 737.

as a prerequisite for the validity of an information, that the same be filed by the district attorney after the holding of a preliminary examination and the issuance of an order of commitment by a committing magistrate or judge; * * *." And it also seems that in Puerto Rico a district attorney is not exercising a judicial function when, as in this case, he is interrogating one suspected of crime to determine whether there is probable cause for the issuance of an information charging him or someone else with commission of the crime under investigation. In People v. Quinones, 76 P.R.R. 894, 896–898 (1954), it is said that a district attorney in drafting an information is definitely not exercising any judicial function but is functioning in much the same way as an attorney when he files a complaint on the basis of the facts given to him by his client.

Since under established principles of law the district attorney was not acting in his judicial capacity when he interrogated Rivera but only as a prosecutor, it follows that Rivera at his interrogation by the district attorney was not entitled to representation by counsel as of right under either the Sixth Amendment or § 2 of the Jones Act.

The appellant's other contention that the failure to provide him with counsel when he confessed deprived him of due process of law remains to be considered.

■ Representation by counsel prior to trial is not an absolute requirement of due process of law. There is no inflexible rule that regardless of the particular circumstances involved an accused in either state or federal prosecutions is denied due process of law by the refusal of his request to confer with counsel during police questioning. Cicenia v. LaGay, 1958, 357 U.S. 504, 509, 78 S.Ct. 1297, 2 L.Ed.2d 1523. Thus, Wood v. United States, 1942, 75 U.S.App. D.C. 274, 128 F.2d 265, on which the appellant heavily relies, is not in point for in that case the court was careful to note at page 270 that the proceeding at which the accused was not represented by counsel, which the court held constituted a de-

nial of due process of law, had the " * * * qualities of a judicial proceeding, not of a prosecutor's inquisition," whereas in the case at bar, as we have already pointed out, the opposite is true.

■ Refusal by the prosecuting authorities of a request by one accused of crime to retain counsel violates due process not only when the accused is deprived of counsel at the trial on the merits but also when he is deprived of counsel for any part of the pre-trial proceedings, " * * * provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' Lisenba v. People of State of California, 1941, 314 U.S. 219, 236 [62 S.Ct. 280, 290, 86 L.Ed. 166,]" Crooker v. State of California, 1958, 357 U.S. 433, 439, 78 S.Ct. 1287, 1292, 2 L.Ed. 2d 1448. Thus whether lack of counsel during pre-trial proceedings constitutes denial of due process of law must necessarily depend upon the circumstances of each particular case. We turn, therefore, to the circumstances of this case.

■ There is no evidence that Rivera ever asked for counsel at the time he was arrested. And, as the Court noted in Crooker v. State of California, supra, at page 438, coercion is more likely to result from denial of a specific request for an opportunity to employ counsel than from the failure to appoint counsel immediately upon an arrest. That greater possibility of coercion, however, is not decisive; whether coercion results from lack of counsel, requested or not, depends upon the accused's age, intelligence, education and experience.

On that score the record shows that at the time of his arrest Rivera was 19 years old, had been to school up to the fourth grade and was not in wholly unfamiliar surroundings when he confessed, for he had had previous encounters with the law. But there was evidence from a psychiatrist who testified for him at his trial that his intelligence was below normal. Indeed on the basis of two vocabulary tests the psychiatrist classified him as a moron. Nevertheless,

the Supreme Court of Puerto Rico, both on the appeal from the judgment of sentence and in this case, concluded from the evidence adduced at the trial, which by agreement also constituted the record in this case, and from the obviously responsive answers to the district attorney's questions and Rivera's coherent statement of his participation in the crime, that Rivera was of sufficient intelligence to understand the warning given to him by the district attorney and to realize fully what he was doing when he made his statement. We see no reason to quarrel with that finding. We therefore conclude with the Supreme Court of Puerto Rico that there was no denial of due process here, for the reason that there was no physical or psychological coercion of any sort, no prolonged interrogation or incarceration before confession, no promise of any reward for confession, and Rivera was given full warning of his rights which he had intelligence enough to understand. In short, our judicial sensibilities are not outraged by what occurred at and immediately prior to Rivera's confession.

Judgment will be entered affirming the judgment of the Supreme Court of Puerto Rico.