The People of Puerto Rico, Plaintiff and Appellee, *v.* Gerardo Cruz Jiménez et al., Defendants and Appellants.

No. Cr-62-206. Decided January 25, 1963.

126

*Víctor Velasco Gordils,* Counsel of Legal Assistance Society, for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The record of this case presents a strong episode. Three adult persons killed an old man by beating him with a bludgeon, the fists and the feet in his own small room 11 feet wide by 12 feet long in one of the old stables of Las Casas race track. The autopsy disclosed multiple contusions and lacerations on the head, the abdomen and the thorax. They ruptured the spleen and lacerated the mesentery and other internal organs, causing profuse hemorrhage of about two quarts of blood disseminated in the abdominal cavity; they fractured four ribs and produced other injuries in the thorax. He received a contusion in the apex region produced with such violence that it invaded the mass and the muscle surrounding the heart. These injuries, said the physician, must have been produced with great violence, probably with a heavy piece of timber swung with sufficient force, a piece of wood, or kicking and tramping on him. The victim presented on the head a contusion two inches by one inch on the frontal left region of the scalp. Death resulted from the rupture of the spleen which produced the massive hemorrhage.

There is hardly in the record any motive for such ruthless killing by these three persons jointly. There was not even the motive of robbery. Apparently a very trivial one: the old man had complained to his son that these persons molested him and the son and one of the aggressors engaged in a fist-to-fist fight. The jury who tried them found them guilty of murder in the first degree. One of them, appellant Eulogio Ortiz Verdejo, filed a motion for a new trial which was argued and denied.

On appeal, they all make the following assignments of error: (1) that it was error to admit in evidence the confessions taken by the district attorney from two of the defendants, Gerardo Cruz Jiménez and Zenén Hiraldo Jiménez; (2) that the trial court erred in denying a separate trial to each and every one of the defendants; (3) that it was error to deny the motion for a new trial made by appellant Ortiz

Verdejo; (4) that the court erred in permitting the jury to take to the jury room the written confessions of two of the defendants; (5) that it was error to admit in evidence an admission by adoption of appellant Ortiz Verdejo in which defendant's silence was commented; (6) that the court erred in refusing to admit in evidence, evidence for defendant Ortiz Verdejo to challenge the confessions of the other two defendants. Lastly, (7) that the verdict was contrary to the evidence and to law.

The first error was not committed. In the course of the investigation two defendants confessed in writing that they had committed the offense. The district attorney was very meticulous in establishing first all the elements and circumstances of the voluntariness of these confessions, as well as the absence of any class of physical or moral coercion. What happened was that, although the confessions were given at police headquarters during the investigation, they were made in the presence of the district attorney and also of a district judge who was called to headquarters. Apart from what has been said, the counsel for the confessing defendants stated for the record, free from any ambiguity, that the confessions were given without any coercion at all.[1]

---

[1] DISTRICT ATTORNEY (Ortiz Juan): Your Honor, the attorney for defendant, Gerardo Cruz Jiménez, and the attorney for defendant, Zenén Hiraldo Jiménez, submit the stipulation in the sense that these statements were made freely and voluntarily, without coercion, promise, or inducement of any kind which may be considered as a violation of the right not to incriminate one's self.

JUDGE: Do colleague Luciano and colleague Mendía agree on that stipulation?

MR. LUCIANO: Yes, sir.

MR. MENDÍA: Yes, Your Honor.

JUDGE: Do both of you, in representation of your respective clients, agree with the district attorney that those statements of your clients were freely and voluntarily given, without any intervening factor of coercion or promise as to vitiate those statements?

MR. LUCIANO: Yes, Your Honor.

MR. MENDÍA: We, Your Honor, after conferring with our client, conclude that his statement was freely and voluntarily given.

Appellants maintain, however, that it is error in Puerto Rico to admit any confession given out of court. They invoke the provisions of § 2 of the Code of Criminal Procedure in the sense that no person can be punished for an offense except upon a legal conviction in a court having jurisdiction thereof, and that *conviction* may be had (1) by verdict of a jury; (2) on confession by defendant in *open court;* (3) by judgment of an authorized court in certain cases, without confession or without the verdict of a jury; and they also invoke the provisions of § 11 which prohibit the district attorney to examine the defense witnesses, except during the public trial. They allege that § 2 bars any confession *outside* open court.

Subdivision 2 of § 2 *supra* does not have the scope attributed by appellants. It establishes one of the ways for finding a person guilty of the commission of an offense without the need of introducing evidence to determine his guilt. It amounts to conviction itself and entails that waiver to the jury whenever such right exists. It affords a basis to pronounce sentence imposing the punishment. See in this connection § § 28, 162, 164, 309, and 310 of the Code of Criminal Procedure, 1935 ed. *Cf. Commonwealth* v. *Lockwood,* 109 Mass. 323; *Ex parte Brown,* 68 Cal. 176; *People* v. *Banks,* 348 P.2d 102; *People* v. *Lennox,* 67 Cal. 113; *People* v. *Duke,*

---

JUDGE: The stipulation is approved.

Do the defendants represented by colleagues Luciano and Mendía agree that those sworn statements offered in evidence by the district attorney were given freely and voluntarily by their respective clients, without any factor which would render them void, as well as that the names affixed thereto, Zenén Hiraldo Jiménez and Gerardo Cruz Jiménez, were written in their statements by the respective defendants and likewise the signature of district attorney Félix Ortiz Juan affixed by him in that act?

MR. MENDÍA: Yes, Your Honor.

MR. LUCIANO: Yes, Your Honor.

DISTRICT ATTORNEY (Ortiz Juan): And that the statements were signed by the defendants after they read them?

JUDGE: Is that correct?

MR. LUCIANO: Yes, Your Honor.

MR. MENDÍA: Yes, sir.

JUDGE: Turn it over to the jury."

330 P.2d 239; *People* v. *Williams*, 27 Cal.2d 220, 163 P.2d 692. That is why the authorities have established the necessary guarantees to the effect that such confession made in open court which relieves the prosecution from establishing the commission of an offense be made by defendant with full consciousness of the consequences which it entails.[2] According to the state of our law, § 2 does not have the legal effect of preventing that a defendant's extrajudicial confession be given and admitted in the course of a criminal prosecution, as a piece of prosecution evidence to be evaluated with the rest of the evidence, subject, however, to those guarantees, part and parcel of the due process of law and of an impartial and fair trial, that such extrajudicial confession has been given voluntarily and free from coercion. Likewise, the provisions of § 11 to the effect that the district attorney may not examine the defense witnesses, except during the public trial, are no bar to the admission of these voluntary and free confessions. In *People* v. *Super. Court; Ramos, Int.*, 80 P.R.R. 679, 681, we said, although for other purposes, that the last sentence of § 11 did not refer to defendant. The inapplicability of this provision is clear. Appellants were questioned out of court as suspects or presumptive wrongdoers of the crime by confidences received by the police. Afterwards they became the defendants themselves, not witnesses for a defendant.

■■ The other contention made by appellants to challenge the admission of the confessions is that in the investigatory stage in which those confessions were given defendants

---

[2] *Cf. Jiménez* v. *Warden*, 74 P.R.R. 240; *Batalla* v. *District Court*, 74 P.R.R. 266, 296; *People* v. *Colón*, 70 P.R.R. 756; *Nieves* v. *Jones, Acting Warden*, 72 P.R.R. 272; *Berg* v. *United States*, 176 F.2d 122 (C.A. 9), cert. denied, 338 U.S. 876; *Waley* v. *Johnston*, 316 U.S. 101; *Ex parte Martínez*, 52 Cal.2d 808, 345 P.2d 449; *People* v. *Mattson*, 51 Cal.2d 777, 336 P.2d 937; *People* v. *Davis*, 48 Cal.2d 241, 309 P.2d 1; *People* v. *Ballentine*, 39 Cal.2d 193, 246 P.2d 35; *Ex parte James*, 38 Cal.2d 302, 240 P.2d 596; *People* v. *Gilbert*, 25 Cal.2d 422, 154 P.2d 657; *People* v. *Griggs*, 17 Cal.2d 621, 110 P.2d 1031; *People* v. *Manriquez*, 188 Cal. 602, 206 Pac. 63; *Application of Breen*, 162 C.A.2d 235, 328 P.2d 465.

did not have legal assistance. We will overlook the fact that the record does not show that they requested at that time leave to consult an attorney. As a matter of public policy in the administration of criminal justice, here and in many other jurisdictions, including the federal jurisdiction, the issue points unquestionably to a disturbing problem which has been and continues to be pressed in the courts and which evidently is of no little preoccupation among those who with more or less concern look after the guarantees of those who are brought before justice for their antisocial acts. This problem is the right to have legal assistance during the preliminary stages of the prosecution in which such assistance is constitutionally guaranteed,[3] particularly if during such stages a confession is obtained which is afterwards used in the prosecution. If, as stated in *People* v. *Superior Court*, *supra*, (p. 682), "the statement made by an accused during the district attorney's investigation—during which the defendant may not have the assistance of counsel—may constitute the only weapon to obtain his conviction," as a matter of public policy the problem is important and may perhaps definitively require a re-examination in the light of criteria to the effect that some guarantee of assistance of counsel in the stages preceding prosecution in court responds to better norms in the administration of criminal justice of a people.[4] However, as an immediate problem such as that presented in this case of an alleged violation of a constitutional guarantee; or as a legal impediment to the admission, during the prosecution, of the confessions, otherwise free and voluntary, of two of the defendants; or as a violation of the due process

---

[3] Constitution of the Commonwealth, Art. II, § 11; *cf.* Constitution of the United States, Amendment VI.

[4] In the Rules of Criminal Procedure which this Court has been adopting and transmitting to the Legislative Assembly pursuant to the Constitutional mandate—Constitution, Art. V, § 6—provision has been made for consultation and assistance of counsel in stages previous to the prosecution in court. Rules 4, 22(b), 22(c), 23(a).

of law, our state of law, already clearly defined, is contrary to appellants' contention in that sense. It is not necessary to elaborate once again in a detailed analysis of the applicable rule of law, since not long ago we reviewed at length the entire problem in the light of our Constitution and the former Organic Act of 1917, of Amendments V and XIV of the Federal Constitution, and of those principles under Amendment VI applicable to federal defendants, in *Rivera* v. *Warden*, 80 P.R.R. 800, which was affirmed by the Circuit Court of Appeals for the First Circuit in 282 F.2d 335, and certiorari was denied by the Supreme Court, 365 U.S. 883. In that decision we analyzed the cases of *Crooker* v. *California*, 357 U.S. 433, and *Cicenia* v. *Lagay*, 357 U.S. 504, and on the authority of those cases and our previous decisions we held that a confession is not involuntary or coerced and inadmissible for the bare fact that it is given during a police investigation without assistance of counsel, and that the constitutional guarantee in that sense does not cover a stage prior to arraignment. We said, following the criteria of the *Crooker* case, that both under our constitutional provisions and under the Fifth and Fourteenth Amendments the right to assistance of counsel is not inescapably restricted to court action, but that there does not exist the absolute right under due process to enjoy legal representation or assistance in the investigatory stage of the crime unless, considering the absence of such assistance jointly with the other circumstances and factors present, the judgment of conviction is the fruit of a situation repugnant to those basic principles of liberty and justice essential to the concept of a fair and impartial trial. Also, that in the absence of the contention of involuntariness, we need not conclude that the confession without assistance of counsel created a situation of fundamental unfairness that vitiated the subsequent trial under due process. We have already seen from the record of this case that such circumstances of fundamental unfairness are not present

here because the confessions were voluntarily given and free from coercion. The cases of *Spano* v. *New York*, 360 U.S. 315, and *Hamilton* v. *Alabama*, 368 U.S. 52, decided subsequent to the *Rivera* case, do not alter that decision. *Spano* rejected under the Fourteenth Amendment the admission in evidence of a coerced or involuntary confession. *Hamilton* held that under the circumstances of that case Alabama had violated the due process clause of the Fourteenth Amendment in denying to defendant legal assistance at the time of his arraignment. This Court guaranteed long ago to defendants the right to legal assistance at that stage. California, the source of our criminal law to which we always resort, notwithstanding the fact that it constitutionally and statutorily guarantees effectively adequate legal assistance in stages prior to the criminal prosecution, maintains similar principles.[5]

■ We turn to the fourth assignment to the effect that it was error to permit the jury to take up in its deliberation the written confessions of the two defendants who confessed. The trial court actually stated as follows: "You will take, ladies and gentlemen of the jury, to the jury room the infor-

---

[5] Constitution of California, Art. I, §§ 8, 13; Penal Code, §§ 858, 859, 859(a), 860, 866.5. *Cf. People* v. *Stroble*, 36 Cal.2d 615, 226 P.2d 330, aff'd, 343 U.S. 181; *People* v. *Dosier*, 180 C.A.2d 436; *People* v. *Grace*, 166 C.A.2d 68, 332 P.2d 811, *cert. denied*, 360 U.S. 940; *People* v. *Coker*, 104 C.A.2d 224, 231 P.2d 81, *cert. denied*, 342 U.S. 894; *People* v. *Boyden*, 116 C.A.2d 278, 253 P.2d 773; *Lisenba* v. *California*, 314 U.S. 219; *People* v. *Linden*, 185 C.A.2d 752; *People* v. *Teitelbaum*, 163 C.A.2d 184, 329 P.2d 157, *cert. denied*, 359 U.S. 206; *People* v. *Pendarvis*, 189 C.A.2d 180. *Betts* v. *Brady*, 316 U.S. 455, which is pending review in certiorari issued in *Gideon* v. *Cochran*, 370 U.S. 908, but independently of the result we do not believe that the situation discussed will be affected since *Betts* involves the refusal to grant legal assistance during the prosecution.

On the other hand, § 32 of the Code of Criminal Procedure provides that when an arrest is made without a warrant, the person arrested must be taken without unnecessary delay before the justice of the peace (the facts of this case are subsequently to the Constitution—*cf. People* v. *Fournier*, 77 P.R.R. 208), and failure to do so would give rise to a situation of illegal arrest; however, the record in this case shows that a district judge went immediately to police headquarters where the confessing defendants were being questioned.

mation filed in this case as well as the pieces of evidence introduced and admitted, all of which are of The People, from 1 to 11, to wit: ... No. 10, statement of Gerardo Cruz Jiménez given before the district attorney; and 11, statement of Zenén Hiraldo Jiménez, also given before the district attorney."

Section 274 of the Code of Criminal Procedure provides that upon retiring for deliberation the jury may take with them all papers, *except depositions*, which have been received as evidence in the cause. Recently, in *People v. Ramos*, 84 P.R.R. 542 (1962), we considered an identical question and held that it was error to permit defendant's written confession to go to the jury. Stating in that case the reasons for the exception of § 274, we said that it is unfair to defendant that the jury should have before them a written document that they can read and reread in which he admits the commission of the offense charged against him, while they only have a recollection of the oral testimony presented at the trial in his defense. Notwithstanding the error was admitted, we did not reverse in *Ramos* considering that under the circumstances of that case the error was not prejudicial. We said, however, that ordinarily to allow the written confession to go to the jury in violation of § 274 entails the reversal of the judgment and the granting of a new trial, and that in the future we shall thus apply the rule.

■■ In fairness to the trial court, it must be said that the error was committed prior to the decision of *Ramos* in which we specifically held that a confession is a deposition. Neither in *People v. Reyes*, 6 P.R.R. 405, nor in *People v. Jiménez*, 78 P.R.R. 7, was any pronouncement expressly made on this question. And, as in the *Ramos* case, we conclude that under the circumstances of this case the error was not prejudicial to such an extent as to warrant reversal of the judgment on this ground. The two confessing defendants did not introduce *defense* evidence and the prosecution evi-

dence on the facts was very simple and brief and did not involve problems of conflict. It ought to be understood, we repeat, after the decision of *Ramos*, that trial judges should not commit the error in the belief that the same might not be prejudicial to defendant. The prohibition of § 274 is clear and should be adhered to by the trial courts.

In support of the fifth assignment of error defendants invoke the decision of this Court in *People* v. *Alvarez*, 85 P.R.R. 569 (1962). While police lieutenant Alejandro Bigio was testifying as to what took place in the course of the investigation, he stated as follows: "Q. When Eulogio, for whom you sent Gerardo, and Zenén told you that Yoyó was also complicated in the matter, did you talk then with Yoyó, with Eulogio? A. I spoke with Eulogio, I exchanged views with him, and he denied the facts. Then, since the brothers Gerardo and Zenén accused him directly that he was the one who had beaten and kicked, we made a sort of confrontation, and Gerardo, who was the one that talked more of the three, would say to him: 'But the three of us were together, tell the truth.' And Zenén also told him to tell the truth. Then he bowed his head and would not say yes or no. He remained silent. Q. Didn't they argue between them? A. He got angry because the others accused him. Q. What did he say then to the other codefendants? A. Well, it was his attitude that makes me say that he got angry."

■ The foregoing evidence was incorporated in the record by Eulogio's own attorney and he did not move later to strike it. In *Alvarez* we repudiated, as a violation of a defendant's constitutional guarantee against self-incrimination, the attempt of the district attorney to bring indirectly to the jury, for consideration, that which was not permissible directly: alleged elements of guilt by reason of the accused's silence; the situation being aggravated by the court's instructions to the jury, which, piercing the protecting veil of the silence, had the legal effect of instructing them that they

136

could use defendant's conduct during the investigation by remaining silent—which constitutionally he had a right to do—as an element of proof against him. *Alvarez* has nothing to correct in this case in which there occurred only what has already been said at the request of defendant himself, without further unfavorable comments nor instructions of the court.

We turn to consider jointly the second, third, and sixth errors assigned. At the opening of the trial appellant Ortiz Verdejo requested to be tried separately owing to certain circumstances. In objecting, the district attorney said: "It seems to us, Your Honor, that the request of the colleague is made on the basis that the defendant whom he represents did not give a deposition... The other two defendants made depositions and I imagine that the colleague fears that, if codefendants' depositions are offered in evidence, the consequences, Your Honor knows what they would be." The defense attorney also argued that his client had a genuine defense which could be defeated by the statements made by the other codefendants who in their testimony connected his client. The motion for a separate trial was denied, fundamentally because if this defendant were found to be connected with the crime in the confessions of the other codefendants, the jury would be instructed to disregard those confessions as to him. The motion for a new trial of this same defendant was based mainly on the court's refusal to grant a separate trial as an error of law during the course of the prosecution.

Since the adoption of the Code of Criminal Procedure in 1902, § 238, until the enactment of Act No. 1 of November 10, 1950 (Sp. Sess. Laws, p. 310), every defendant charged with felony could request, as a matter of law, a separate trial. As of this Act two or more defendants may be tried jointly and the court could, in its discretion, grant a separate trial.

The provision which prevailed in this country for almost half a century, granting a separate trial as a matter of law in felony cases, was designed to avoid many serious problems in the administration of justice, particularly in cases tried by jury. Although in California, from which our precept was taken, a separate trial was discretionary since 1921, our lawmaker saw fit to preserve the guarantee unaltered until 1950, when coetaneously with the occurrence of certain acts which are of general knowledge he eliminated the right to a separate trial in felony cases leaving to our courts, in the exercise of sound discretion, the function of safeguarding the rights of defendants.

Since then we have held that a separate trial in felony cases rests in the sound discretion of the court. *People* v. *Muñiz*, 77 P.R.R. 808, 810; *People* v. *Ortiz*, 76 P.R.R. 241, 247; *People* v. *Meléndez*, 80 P.R.R. 759, 760 (footnote 2). In *People* v. *Casanova*, 77 P.R.R. 690, a case which did not involve the problem of separate trial under § 238, we reversed the judgment on the ground that no special instruction was transmitted to the jury in the sense that a confession could be used only against the declarant but not against other codefendants incriminated therein, in order to determine the latter's guilt.

The joint trial in felony cases, particularly before a jury, presents at times serious problems of procedural guarantees which have been the source of much concern, among which is the problem of harmful evidence which is legally admissible against a codefendant but not against another. In these cases there is at least the weapon of cross-examination. However, it is in the case of defendants' confessions which incriminate codefendants, when the problem dangerously nears a denial of an impartial and fair trial and of the due process by reason of the latter's state of indefense as a result of their inability to cross-examine their accusers. A great majority of the courts in other jurisdictions have attempted to solve

this problem by applying the principle followed in *Casanova*, and a separate trial has been denied on the ground that the court can always instruct the jury to take into consideration the incriminating facts contained in a confession only as respects the confessing defendant. California has maintained a close criterion on the matter and understands that a remedy is thus afforded to the situation. There are, however, other criteria in the case law, which are indeed respectable, which deny the effectiveness of the remedy. Thus, for example, Illinois has said, *People* v. *Sweetin*, 325 Ill. 245, 156 N.E. 354:

> "While it is generally a matter of discretion with the court as to whether a separate trial shall be granted, such discretion is not arbitrary, but should be so exercised as to prevent injustice, wherever possible. While the court instructed the jury that Hight's confessions were not admissible as against plaintiff in error, such instruction could by no possibility eradicate the testimony from the minds of the jury. While theoretically the instructions withdrew the evidence from the consideration of the jury, practically the human mind is so constructed that inevitably the prejudicial effect remained therein. . . . Some of the cases have stated that, on the plainest principles of justice, if the prosecutor intends to use such confession, the prisoner shall be tried separately."

The judgment of conviction was reversed for refusal to grant a separate trial.

Mr. Justice Jackson, concurring in *Krulewitch* v. *United States*, 336 U.S. 440, in which the judgment of conviction was reversed on the ground of admission of evidence concerning a statement made by a co-conspirator several months after the act of conspiracy, said (p. 453): "The naive assumption that prejudicial effects can be overcome by instructions to the jury [citation], all practicing lawyers know to be unmitigated fiction."

In *Anderson* v. *United States*, 318 U.S. 350, reversing a judgment of conviction, Mr. Justice Frankfurter said (p. 356):

"... So also, while the trial judge appeared to admit the confessions 'only to be used against the persons who made them,' his charge bound the jury to no such restricted use of the confessions... There is no reason to believe, therefore, that confessions which came before the jury as an organic tissue of proof can be severed and given distributive significance by holding that they had a major share in the conviction of some of the petitioners and none at all as to the others."

Fourteen years later, in his dissenting opinion in *Delli Paoli* v. *United States*, 352 U.S. 232, in which three Justices joined, Mr. Justice Frankfurter again said:

"... The dilemma is usually resolved by admitting such evidence against the declarant but cautioning the jury against its use in determining the guilt of the others. The fact of the matter is that too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell."

In *Nash* v. *United States*, 54 F.2d 1006 (C.A. 2), affirming a judgment of conviction, Mr. Justice Hand stated nevertheless as follows in referring to a written statement given immediately after the arrest:

"... It was allowed in evidence against Keane alone, and as his admission, under the recognized subterfuge of an instruction to the jury to confine its use to him. If we were to reframe the law of evidence and were still to preserve the hearsay rule, it might be better to keep out all such, for the practice, though well settled, is an evasion, and evasions are discreditable. There is no reason why the prosecution, if it chooses to indict several defendants together, should not be confined to evidence admissible against all, and if real injustice were done, the result would be undesirable. In effect, however, the rule probably furthers, rather than impedes, the search for truth, and this perhaps excuses the device which satisfies form while it violates substance; that is, the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else."

And in *United States* v. *Pugliese*, 153 F.2d 497 (C.A. 2), Mr. Justice Hand himself stated (p. 500) : "How far a jury which had heard evidence, can in practice use it against one of several accused and not against others, is very questionable at best; most persons cannot think in watertight compartments."

In *United States* v. *Haupt*, 136 F.2d 661, reversing a judgment of conviction in which a separate trial was first denied and later a new trial, in a situation in which there was abundant evidence regarding which the jury would have difficulty in limiting the same to each defendant individually to whom it was applicable, the Court of Appeals of the Seventh Circuit said (672) :

"... We doubt if it was within the realm of possibility for this jury to limit its consideration of the damaging effect of such statements merely to the defendant against whom they were admitted. We have equal doubt that any jury, or for that matter any court, could perform such a herculean feat... We are unaware of any procedure which the trial court could have devised, other than a severance, by which these incriminating statements could have been introduced against the defendants making them, without seriously prejudicing the rights of other defendants."

What occurs to the mind of the jury in these situations is characterized, in our opinion, by the fable mentioned in 43 Cornell L.Q. 128, of the buried treasure which could be found by a farmer provided that when digging he did not think about a full moon.[6]

We must repeat that the foregoing criteria are selective rather than from a majority opinion and that not all cases cited involved a separate trial, and in many the real problem was the lack of proper instructions to the jury, as in our

---

[6] We greatly appreciate the previous compilation of specific citations in a memorandum of the then brother and Associate Justice, Hon. Raúl Serrano Geyls, which was circulated in connection with the opinion which he wrote for the Court in the case of Meléndez, *supra*. See footnote 2 of that case, 80 P.R.R. 760.

*Casanova* case. However, this Court has taken a well-defined position adhering rather to the selective criteria, in the belief that a fair trial is thereby better guaranteed.

In *Reyes* v. *Superior Court*, 84 P.R.R. 27 (1961), reviewing by certiorari an order denying a separate trial in which the problem pointed out was involved, the Court said through one of its Divisions in an excellent and also persuasive exposition of Mr. Justice Dávila:

"In view of the foregoing, and inasmuch as it should be the norm of every court that justice should always have precedence over all precedents, it seems fair and reasonable to hold separate trials in those cases in which one of the defendants has made a confession which affects codefendant adversely. Thus, it should be the norm of the trial courts to examine the declaration which the district attorney proposes to introduce and determine whether the allusion made therein to the codefendant would affect him adversely, and at the same time ask themselves: Does a separate trial guarantee to the defendant a fairer and more impartial trial than if he were tried jointly? If the answer is in the affirmative, discretion should be exercised by granting a separate trial." (Citations.)

The order denying a separate trial was set aside. We ratify once more the norm adopted which follows in general terms the long-established norm of Illinois. Trial courts should not readily dispose of a motion for a separate trial on the ground that if the crucial problem should arise pertinent instructions will be given to the jury. They should make a detailed deliberation on the problem searching for all elements of judgment which will enable them to determine conscientiously whether or not the trial would be impartial and fair. If there is the slightest doubt that it shall not be so, the discretion should be good and a separate trial granted.

Now then, in deciding the case before us we will take into consideration the normative situation prevailing at the time the trial court denied a separate trial and a new

142

trial. We will therefore examine the record in order to determine whether the circumstances were such that the confessions made by the other two defendants which incriminated Ortiz Verdejo deprived the latter of an impartial and fair trial, notwithstanding the instructions given to the jury. It must be said that the trial court showed commendable zeal in those instructions, that it repeated over and over again on all proper occasions that nothing said in those confessions could be used by the jury against this other codefendant. If we had any doubt at all that this defendant did not have a fair trial on that ground, we would reverse and order that he be retried. But we have none in the light of all the circumstances which we have taken into consideration. There was evidence of an eyewitness, which would convince any jury, on Ortiz Verdejo's direct participation in the perpetration of the killing. The prosecution evidence was brief, simple, without complications which could confuse the jury. The two confessing defendants did not introduce any evidence, and Ortiz Verdejo defended himself on the basis of evidence of alibi, though in fact not very convincing, which the jury undoubtedly had reason to disbelieve. *Cf. Delli Paoli* v. *United States, supra; United States* v. *Gottfried,* 165 F.2d 360, 367 (C.A. 2). As respects this codefendant, the only one who requested to be tried separately, there is no reason to reverse the judgment on that ground nor as to the others who did not make the request.

 ██ The sixth error assigned is a consequence of the refusal to grant a separate trial and of the situation pointed out. It can not be denied that an accused has the right to introduce evidence to show the interest of an accusing witness against him, but the codefendants who incriminated Verdejo in their statements did not take the witness stand and their confession was admitted only as against them and not as against Verdejo. Apart from the very fact of the need for a separate trial, the problem object of the sixth assignment

of error did not arise in law. The seventh assignment to the effect that the judgment of conviction was contrary to the evidence and to law is untenable in the light of the record. The evidence believed by the jury supports a verdict of murder in the first degree.

The judgments of conviction will be affirmed as to all appellants.